**NOT FOR PUBLICATION** (Doc. Nos. 14, 17)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| ALONZO HARRIS, | : | |
| | : | |
| Plaintiff, | : | Civil No. 09-2982 (RBK/AMD) |
| | : | |
| v. | : | **OPINION** |
| | : | |
| WILLIAM NIELSEN, et al., | : | |
| | : | |
| Defendants. | : | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon motions by Defendant Tara Rosselli ("Defendant Rosselli") to seal documents [Doc. No. 14] (the "Motion to Seal") and for summary judgment [Doc. No. 17] (the "Motion for Summary Judgment"). The Complaint is brought pursuant to 42 U.S.C. 1983 and alleges violations of Alonzo Harris's ("Plaintiff") Eighth and Fourteenth Amendment rights.[1] For the reasons expressed below, the Court will grant both the Motion to Seal and the Motion for Summary Judgment.

**I. BACKGROUND**

Plaintiff currently is incarcerated at the Marion Correctional Facility in Marion, Ohio. At all times relevant to his Complaint, Plaintiff was incarcerated at the Cape May County Correctional Center in Cape May, New Jersey ("Cape May"). Plaintiff alleges that while he was incarcerated at Cape May he was assaulted by two guards, William Nielsen ("Defendant Nielsen") and Joseph Tallerice ("Defendant Tallerice"). Plaintiff further alleges that he sustained

---

1   As discussed below, Defendant Roselli reads the Complaint to allege medical malpractice as well.

substantial head and eye injuries as a result of the alleged assault.  Shortly after the alleged assault, Plaintiff was seen by Defendant Rosselli for medical evaluation.  Plaintiff alleges that although he reported experiencing blurred vision, dizziness, and a severe headache, Defendant Rosselli conducted, at best, only a minimal evaluation.  The next day, Plaintiff was seen by Dr. Ash, a prison doctor who evaluated him for concussion symptoms.  Plaintiff alleges that the symptoms continued for months and were not alleviated after several additional consultations.

On June 6, 2009, Plaintiff brought this civil action against Defendants Nielsen, Tallerice, Rosselli, and Richard Harron, Sr., the Warden of Cape May.  As to Defendant Rosselli, the Complaint alleges that she violated Plaintiff's Eight Amendment right against cruel and unusual punishment, applicable to the Defendants via the Fourteenth Amendment, by providing insufficient care for the injuries he sustained from the alleged assault (Plaintiff's "Constitutional Claim").  Defendant Rosselli also reads the Complaint to allege that she committed medical malpractice (Plaintiff's "Malpractice Claim").[2]  The Complaint seeks damages in the amount of $150,000 and injunctive relief in the form of restraining orders against Defendants Nielsen and Tallerice.

On October 5, 2009, Defendant Rosselli filed her Motion to Seal, requesting the Court to seal portions of Plaintiff's medical records, which, at the time, were to be (and, in fact, were) submitted with Defendant Rosselli's then-upcoming Motion for Summary Judgment.  Plaintiff did not respond to the Motion to Seal.  On November 4, 2009, Defendant Rosselli filed her Motion for Summary Judgment regarding both the Plaintiff's Constitutional and Malpractice

---

[2]  The Complaint, although it does not explicitly include a claim for malpractice against Defendant Rosselli, states that "[Defendant Rosselli's] negligence to her duties may have had lasting effects on my health." Compl. 5(e).  Defendant Rosselli reads this "possibly" to be a medical malpractice claim.  Def. Tara Rosselli's Br. Supp. Mot. Summ. J. 1.  For the purposes of this Opinion, the Court will assume that the Complaint does include a medical malpractice claim against Defendant Rosselli.

Claims.  Plaintiff did not respond to the Motion for Summary Judgment by way of a brief in opposition.  Rather, Plaintiff filed a letter requesting an extension of time to file a response in anticipation of receiving certain discovery materials [Doc. No. 25].

On March 31, 2010, the Court ordered Plaintiff to file an affidavit that complied with Federal Rule of Civil Procedure 56(f) in support of his request for an extension of time [Doc. No. 34].  Plaintiff responded by letter on April 12, 2010 [Doc. No. 37], but the letter did not meet the requirements of Rule 56(f).  On April 23, 2010, the Court denied Plaintiff's Rule 56(f) request [Doc. No. 39] but, for reasons set forth in that Order, granted Plaintiff an extension and ordered Plaintiff to file a response in opposition to the Motion for Summary Judgment by May 3, 2010.  On April 30, 2010, Plaintiff filed a letter brief opposing the Motion for Summary Judgment.  Accordingly, the issues are now ripe for decision.

## II.   LEGAL STANDARD

### A.   Motion to Seal

The Motion to Seal is governed by Local Civil Rule 5.3, which provides in pertinent part that a request to seal must be presented by motion.  The motion papers must describe "(a) the nature of the materials or proceedings at issue, (b) the legitimate private or public interests which warrant the relief sought, (c) the clearly defined and serious injury that would result if the relief sought is not granted, and (d) why a less restrictive alternative to the relief sought is not available."  L. Civ. R. 5.3(c)(2).  Local Rule 5.3 also provides that any order or opinion on any motion to seal "shall include findings on the factors set forth in (c)(2) . . . as well as other findings required by law . . . ."  L. Civ. R. 5.3(c)(5).

It is well-established that there is a "common law public right of access to judicial proceedings and records."  In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001).  This is

consistent with well-established precedent, based on First Amendment considerations and the common law right of access to judicial records, that documents filed with the court and judicial proceedings are open to the public.  See Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978); FTC v. Lane Labs-USA, Inc., No. 00-3174, 2007 U.S. Dist. LEXIS 6430, at *2 (D.N.J. Jan. 30, 2007).  In order to overcome this presumption of a public right of access, the movant must demonstrate that "good cause" exists for the protection of the material at issue. Securimetrics, Inc. v. Indian Techs., Inc., No. 03-4394, 2006 WL 827889, at *2 (D.N.J. Mar. 30, 2006).  Good cause exists when a party makes a particularized showing that disclosure will cause a "clearly defined and serious injury to the party seeking closure."  Id. (citing Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994)).  A Motion to Seal can be granted when the movant proves that the information is confidential in nature and that allowing the general public to access the information will cause a specific and serious injury.  Pansy, 23 F.3d at 788.  The claimed injury must be specifically stated because "'[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning,' do not support a good cause showing."  Id. at 786 (citing Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.1986)).

      **B.**    **Motion for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Id. at 255.

4

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 247 Fed. Appx. 353, 354 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**III.    DISCUSSION**

A.     **Motion to Seal**

The Motion to Seal describes the materials at issue as "confidential medical records containing [Plaintiff's] medical history as well as personal information such as his date of birth and other personal identifying numbers." Certification of Stephen E. Siegrist, Esquire  6(a). The Motion to Seal cites Plaintiff's privacy rights as the legitimate interest protected by sealing the medical records. Id.   6(b).  Defendant Rosselli argues that public availability of the medical records, via the PACER system, "could create serious injury to [Plaintiff] . . . ." Id.   6(c). Defendant Rosselli also argues that a less restrictive alternative is unavailable because information contained in the medical records is necessary to decide the Summary Judgment Motion because the issue presented therein is improper medical care. Id.   6(d).

The Court finds that the Motion to Seal describes the nature of the materials at issue, articulates the legitimate interests which warrant the relief sought, and explains why a less restrictive alternative is unavailable, as required by Local Civil Rule 5.3(c)(2).  Plaintiff has a legitimate privacy interest in his medical records. See Doe v. Delie, 257 F.3d 309, 315 (3d Cir. 2001) ("We have long recognized the right to privacy in one's medical information . . . ."). The Court agrees that the medical records do contain information relevant to the issues presented in the Summary Judgment Motion and that, at this point in time, a less restrictive alternative is not available.[3]

---

    3     The Court notes that, as discussed below, not all of the medical records submitted are relevant to the Summary Judgment Motion.  Had this Motion to Seal been decided before the medical records were submitted, a less restrictive option would have been available vis- -vis the irrelevant portions of the medical records; such portions simply could have been withheld. On different facts, the unnecessary submission of irrelevant material could constitute waiver of the argument that a less restrictive option did not exist when the irrelevant materials were filed. Instead of seeking to seal irrelevant materials that will be filed, a party should simply choose not to file them–a less restrictive option.  Here, however, since the party submitting the irrelevant materials is not the party whose interests would be protected by sealing them, the Court finds

On the other hand, the Motion to Seal contains only a conclusory statement of the clearly defined serious injury that would support a good cause showing in order to protect the material at issue, as required under Local Civil Rule 5.3(c)(2) and Pansy. Defendant Rosselli states that a violation of Plaintiff's privacy interest in his medical records either would be or could create a serious injury to Plaintiff. This broad, unsubstantiated claim is insufficient under Pansy. See Pansy, 23 F.3d at 786.

That said, the public's interest in access to court documents derives from the documents' utility in understanding the factual bases for court decisions. If a court makes a decision based in part on sealed medical records, the public is less able to reconstruct and understand that decision than if the records were available publicly. The rule that vague or hypothetical injuries are insufficient thus serves to protect the public interest in access to court documents from an overzealous movant seeking to protect its own privacy interest at the public's expense. Where the movant is the party whose privacy interests are sought to be protected, the specificity requirement facilitates this balance because the movant is in the best position to articulate harm caused; if the movant cannot articulate a specific threat, it is likely that no such threat exists. But where the movant is not the party whose privacy interests are sought to be protected, limiting the inquiry to harms articulated by the movant artificially constricts the analysis and potentially precludes a court from considering serious injuries to the party whose privacy interests are sought to be protected merely because they were not articulated by the (at least partially) disinterested movant. The Court will thus look beyond the harm described in the Motion to Seal and consider more generally the injury Plaintiff might suffer if the Motion to Seal were not granted.

---

that a less restrictive alternative does not exist.

It appears that the medical records submitted by Defendant Rosselli are Plaintiff's entire medical file from Cape May.  The submission contains several pages of medical records that are not relevant to Plaintiff's suit or to the instant motions, some of which were created prior to the alleged assault, including forms relating to the routine processing of new inmates, descriptions of medications taken by Plaintiff, and records of unrelated consultations.  Plaintiff's privacy interest in his medical records would be completely obliterated by the wholesale disclosure of his entire file.  The public clearly has no interest in access to these portions of Plaintiff's medical records.  The Court finds the disclosure of Plaintiff's medical history and personal identifying numbers to be a clearly defined serious injury sufficient to support the sealing of the documents.  Consequently, the Court will grant the Motion to Seal.

      **B.**      **Motion for Summary Judgment**

Defendant Roselli argues that she is entitled to summary judgment on Plaintiff's Constitutional Claim because she did not treat Plaintiff in a constitutionally deficient manner in that she did not act with deliberate indifference towards him.  Defendant Roselli also argues that she is entitled to summary judgment on Plaintiff's Malpractice Claim because Plaintiff has failed to comply with the New Jersey Affidavit of Merit Statute, N.J. Stat. Ann. § 2A:53A-27, et seq.

      **1.**      **Plaintiff's Constitutional Claims**

To succeed on an Eighth Amendment claim for denial of medical care, a plaintiff must prove deliberate indifference to a serious medical need.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Wilson v. Seiter, 501 U.S. 294, 297 (1991).  This requires both an objective and a subjective showing.  Rodriguez v. Hayman, No. 08-4239, 2009 WL 4122251, at *7 (D.N.J. Nov. 23, 2009).

Objectively, the alleged medical need must be sufficiently serious.  Id.  The Third Circuit

has recognized serious medical need where a physician has diagnosed the prisoner with a condition requiring treatment, where it is exceedingly obvious that a prisoner's condition requires the attention of a doctor, and lack of treatment would result in the unnecessary and wanton infliction of pain, lifelong handicap, or permanent loss.  See Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).  Factors relevant to the seriousness inquiry may also include whether the impairment is such that "a reasonable doctor or patient would find [it] important and worthy to treat," whether it affects the daily activities of the individual, or whether the condition involves chronic and substantial pain.  Tatta v. Wright, 616 F. Supp. 2d 308, 317 (N.D.N.Y. 2007) (report and recommendation) (citing Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).

Subjectively, the defendants must have acted with a sufficiently culpable state of mind. Deliberate indifference is more than mere negligence.  See Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). To be deliberately indifferent, the defendants must be aware of and then disregard an excessive risk to a prisoner's health or safety.  See Farmer v. Brennan, 511 U.S. 825, 836, 837-38 (1994). A prisoner's subjective dissatisfaction with medical care does not, without more, show deliberate indifference.  See Andrews v. Camden County, 95 F. Supp. 2d 217, 228 (D.N.J. 2000) (citing Peterson v. Davis, 551 F. Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984)).

Similarly, "mere disagreements over medical judgments do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  Inmates of

9

Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. See Estelle, 429 U.S. at 105-06. "Where prison authorities deny reasonable requests for medical treatment, however, and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest. Similarly, where 'knowledge of the need for medical care [is accompanied by the] . . . intentional refusal to provide that care,' the deliberate indifference standard has been met." Monmouth County Corr. Inst. Inmates, 834 F.2d at 346 (citations omitted).

Defendant Rosselli asserts that she examined Plaintiff subsequent to the alleged assault on April 26, 2006. Rosselli Stmt. Facts ¶ 5. She documented that Plaintiff had a "two by two inch contusion" and scratches on his forehead and a swollen lip. Id. ¶ 6. Based on her examination, Defendant Rosselli determined that immediate treatment was not necessary and referred Plaintiff to Dr. Ash, the prison doctor for a follow-up examination. See id. ¶ 7. Later that day, Plaintiff again complained of blurred vision and a persistent headache. Id. ¶ 8. This time a different nurse, Toni Tees, telephoned Dr. Ash and related to him Plaintiff's complaints and both nurses' observations. Id. ¶ 8. Dr. Ash ordered Motrin for Plaintiff. Id. As planned, Dr. Ash saw Plaintiff the next day. Id. ¶ 9. Based on his examination, Dr. Ash ordered various tests and referred Plaintiff to other physicians for additional care. Id. ¶¶ 10-14. Besides a visual acuity problem with Plaintiff's right eye, the test results were normal. Id. ¶¶ 10, 14.

Defendant Rosselli asserts that she provided Plaintiff with care that was reasonable and within the range of skill possessed by licensed practical nurses. Id. ¶ 15. It is Dr. Ash's professional opinion that Defendant Rosselli provided Plaintiff with care that was appropriate

and within the standard of care. Id. ¶ 16. Dr. Ash also asserts that Defendant Rosselli's conduct did not "in anyway [sic] cause[], worsen[], or exacerbate[] Plaintiff's injuries." Id. ¶ 17 (citing Aff. Reuben Ash, M.D. ¶ 12).

Plaintiff disputes none of the foregoing but asserts that Defendant Rosselli "did not examine [him] for a concussion" and "did not physically check the facial bruising for possible facial fractures." Pl.'s Letter Br. Opp'n. Plaintiff further asserts that upon hearing him describe his symptoms, Defendant Rosselli stated, "[o]h, he's fine," and provided neither an ice pack nor aspirin. Id. Plaintiff argues that Defendant Rosselli's alleged lack of treatment caused "pain and suffering that could've been lessened." Id. Plaintiff also cites an earlier experience at Cape May, in which Plaintiff presented with similar symptoms and was taken immediately to the hospital.

The factual basis for Plaintiff's allegations that Defendant Rosselli was deliberately indifferent to his potential concussion is not entirely clear.[4] Basically, Plaintiff appears to be arguing that Defendant Rosselli should have referred Plaintiff to a doctor sooner or taken steps to be sure Plaintiff had not sustained a concussion. Plaintiff seems to believe that the Defendant Rosselli was deliberately indifferent to his injuries because she stated that he was "fine" and did not examine him more carefully or refer him for immediate treatment. Perhaps recognizing that he is not entitled to the treatment of his choice, Plaintiff attempts to characterize the treatment that Defendant Rosselli provided as no treatment at all. This contention, however, is insufficient to avoid summary judgment, and Defendant Rosselli's failure to do these things does not amount to deliberate indifference. To the extent that Plaintiff bases his constitutional claims against Defendant Rosselli on her allegedly negligent failure to conduct a more thorough examination

---

[4] Because both parties focus on the subjective element of deliberate indifference, the Court will assume, without deciding, that Plaintiff's potential concussion constitutes a serious medical need sufficient to satisfy the objective element of an Eighth Amendment claim.

and/or on her allegedly negligent failure to refer Plaintiff for immediate medical care, it is enough to observe that mere allegations of negligence do not rise to the level of a constitutional violation. See Estelle, 429 U.S. at 103-04.

Indeed, there does not appear to be any other evidence that could possibly support the argument that Defendant Rosselli treated Plaintiff with deliberate indifference. Defendant Rosselli evaluated Plaintiff after the alleged assault. During that consultation, Defendant Rosselli examined Plaintiff and determined that he did not require urgent care. Later that same day, Dr. Ash was informed of Plaintiff's injuries and Defendant Rosselli's observations and also determined that Plaintiff's condition was not urgent. Although Plaintiff maintains that more care should have been provided sooner, nothing about the medical care provided by Defendant Rosselli indicates that she was deliberately indifferent to Plaintiff's potential concussion. Accordingly, summary judgment is appropriate with respect to Plaintiff's Constitutional Claim against Defendant Rosselli.

### 2. Plaintiff's Malpractice Claim

The Affidavit of Merit Statute requires medical malpractice plaintiffs to file an affidavit of a licensed physician within sixty days of the defendant's answer.[5] Chamberlain v. Giampapa, 210 F.3d 154, 156 (3d Cir. 2000) (citing N.J. Stat. Ann. § 2A:53A-27)). The affidavit must state that there exists a "reasonable probability" that the care referred to in the complaint falls outside accepted professional standards. Id. (citing N.J. Stat. Ann. § 2A:53A-27)). A court is authorized to grant one, and only one, sixty-day extension for good cause. N.J. Stat. Ann. § 2A:53A-27. Failure to comply with the affidavit or sworn statement requirement results in dismissal with

---

[5] The New Jersey Affidavit of Merit Statute is substantive state law applicable to any state law claims asserted by Plaintiff over which the Court asserts supplemental jurisdiction. See Chamberlain v. Giampapa, 210 F.3d 154, 161 (3d Cir. 2000).

prejudice. N.J. Stat. Ann. § 2A:53A-29; Chamberlain, 210 F.3d at 158.

On August 14, 2009, Defendant Rosselli filed her Answer [Doc. No. 7] to Plaintiff's Complaint. The Answer specifically demanded compliance with the Affidavit of Merit Statute. Rosselli Answer 3. Plaintiff did not file an affidavit or a request for an extension of time within sixty days. Since Plaintiff has failed to comply with the Affidavit of Merit Statute, any claim Plaintiff may have brought against Defendant Rosselli sounding in medical malpractice must be dismissed with prejudice.[6] See Alan J. Cornblatt, P.A. v. Barow, 708 A.2d 401, 415 (N.J. 1998) (observing that dismissal for failure to comply with Affidavit of Merit Statute should be with prejudice in all but "extraordinary circumstances"). The Court thus will grant summary judgment for Defendant Rosselli on Plaintiff's Malpractice Claim.

IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendant Rosselli's Motion to Seal and Motion for Summary Judgment.


Dated: 6-15-2010            /s/ Robert B. Kugler
           ROBERT B. KUGLER
           United States District Judge

---

[6] Although the Court is mindful that Plaintiff is proceeding without the services of an attorney, his pro se status does not excuse his failure to comply with the statute. Bivens v. Correctional Med. Servs., Inc., No. 05-3444, 2006 WL 2689821, at *3 (D.N.J. Sept. 14, 2006).